UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.  8:00-cr-58-T-23MAP
 8:04-cv-180-T-23MAP

ANTHONY AHEDO
_____/

# **O R D E R**

Ahedo's motion to vacate sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for one count of conspiracy to commit armed robbery, two counts of robbery, and two counts of carrying and using a firearm during the two robberies.  Ahedo is serving consecutive sentences totaling ninety years. The timeliness of the motion is not challenged in the response (Doc. 6).  Ahedo's first ground is not reviewable and his four grounds of ineffective assistance of counsel are meritless.

## **FACTS**[1]

> On November 25, 1998, when Carol and Joseph Quatkemeyer returned home from dinner, someone inside the house grabbed Joseph and beat Joseph unconscious.  The robbers bound the Quatkemeyers and stripped them of their jewelry, and threatened Carol with death unless she gave them the keys, the safe combination, and the alarm codes to the Pasadena Estate Jewelry Store (the "Pasadena store"), which she owned. One robber with a gun stayed behind to watch the bound Quatkemeyers while the other two left in Carol's car to rob the Pasadena store.  After the other two had robbed the store, they returned to the Quatkemeyers' residence to pick up the robber who stayed behind, and then left.  Carol reported that the robbers wore black outfits and masks, and appeared to be about 5' 9-10" tall and weigh about 175 pounds.

---

[1] This summary of the facts is copied from the circuit court's decision on direct appeal at 2-3 (Doc. 146) (citations to the record omitted).

> On February 22, 1999, Ross Levy, the owner of the Diamond Bank Jewelry Store in St. Petersburg, Florida, awakened to find three masked men dressed in black in his house pointing guns at him. Levy was threatened with death and handcuffed behind his back. Once the men obtained the store keys, alarm codes, and safe combination from Levy, they bound him and left one of the men behind to guard him, while two left to rob the store. The robbers, however, could not get the safe open, returned to Levy's house for him, and took him by gunpoint to the store. The men took all of the merchandise in the store, one firearm from the store, and one firearm from Levy's house, and left him bound in the store. Levy described the men as about 5' 8-9" tall and two with thin builds and one with a heavier build.

## **LAW OF THE CASE**

In ground one Ahedo challenges the constitutionality of the warrantless search at his residence, which search yielded evidence used to convict him, and contends both that his girlfriend lacked the authority to consent to the search and that her consent to search was involuntary. The circuit court rejected the arguments on direct appeal. Order at 12-13 (Doc. 146). Consequently, ground one is not reviewable in this collateral proceeding. "The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case." United States v. Jordan, 429 F.3d 1032, 1035 (11th Cir. 2005). See also United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. [O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255.").

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Ahedo asserts three grounds of ineffective assistance of trial counsel and one ground of ineffective assistance of appellate counsel. A claim of ineffective assistance

- 2 -

of counsel is difficult to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."

Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Ahedo must demonstrate that error by counsel prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Ahedo must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Ahedo cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial

lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Ground Two:

Ahedo alleges that trial counsel provided ineffective assistance by failing to call five witnesses: Jose Morales,[2] Rosie and Burt Berrios,[3] Stephanie Gomez,[4] and Detective John Cameron.[5]  Ahedo limits his claim to counsel's alleged failure to present these potential witnesses at trial; Ahedo's claim is not that counsel failed to investigate these potential witnesses.

Ahedo's claim fails because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic

---

[2] Ahedo contends that Morales would have testified that Morales "helped Eddie Gomez move some furniture and a suitcase with guns in it to the detached garage where guns were later found." Petition at 5-B-1 (Doc. 1).  Ahedo fails to explain the exculpatory nature of this proposed testimony.

[3] Ahedo contends that "Rosie and Burt Berrios would have testified that petitioner was at their house the day before and the day of the Pasadena Estate Jewelry Store robbery, November 25, 1998." Petition at 5-B-1 (Doc. 1).  This proposed testimony fails to both provide an alibi during the robbery and overcome testimony to the contrary by co-defendant Campos and the purchaser of the stolen jewelry.

[4] Ahedo contends that "Stephanie Gomez would have testified that on the night of the Diamond Bank Jewelry Store robbery, her husband Eddie Gomez, Carl Campos, and Hyman Ahedo left and later returned to her house with a bag of jewelry and that her husband told her that they robbed a jewelry store." Petition at 5-B-1 (Doc. 1).  This proposed testimony fails to overcome testimony to the contrary by co-defendant Gomez that Ahedo participated in the robbery.

[5] Ahedo contends that "Hernando County Sheriff's Detective John Cameron would have testified that Hyman Ahedo told him of a jewelry store robbery where he, Hyman Ahedo, would call 911 after the robbery to make sure that the victim got untied and didn't die." Petition at 5-B-2 (Doc. 1).  The proposed testimony fails to exclude Anthony Ahedo's participation in the charged robbery.  Additionally, Anthony Ahedo fails to present independent evidence (such as an affidavit from Detective Cameron) supporting the proposed testimony.

- 5 -

Choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. See also, Mincey v. Head, 206 F.3d 1106, 1143 (11th Cir. 2000) ("We must respect the counsel's tactics if they seem 'reasonable considering all the circumstances.'" (quoting Strickland)).

Trial counsel must decide which strategic and tactical option to pursue, such as deciding which witness to call and which defense to present. See, e.g., Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.") (citation omitted), and Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (en banc).

The term "strategy" is broadly defined. "By 'strategy,' we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." Chandler v. United States, 218 F.3d at 1314 n.14. See also Felker v. Thomas, 52 F.3d 907, 912 (11th Cir. 1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others."), and Stanley v. Zant, 697 F.2d 955, 964 (11th

Cir.1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).

Ground Three:

Ahedo alleges that trial counsel provided ineffective assistance by convincing Ahedo to waive his right to testify. Ahedo states that he relied on counsel's representation that Ahedo "didn't have to prove anything, that the government didn't have a case against him, and that it was their job to prove the case beyond a reasonable doubt." Petition at 5-C-1 (Doc. 1). Ahedo argues that "[t]his misadvice by counsel overborned [sic] petitioner's will and rendered the waiver of the right to testify involuntary." Petition at 5-C-1 (Doc. 1).

Ahedo represents that (1) he wanted to admit that he arranged the sale of the stolen jewelry, (2) his brother, not he, was involved in the charged robberies, (3) "he had never committed the kind of robbery he was charged with," and (4) "his testimony was essential . . . and would have weighed heavily upon the juror's minds. . . ." Petition at 5-C-1 (Doc. 1). These last two points were significant in deciding whether to testify. If Ahedo had testified, the jurors would have learned that, in addition to his lengthy record, between the dates of the Pasadena store and the Diamond Bank store robberies, Ahedo and co-defendant Campos committed another armed robbery using the same methods employed in both of the charged robberies.

> On January 6, 1999, the defendant and co-defendant, Carl Campos, wearing ski masks, broke into the victim's residence in Spring Hill, Florida. They carried a rifle, a hunting knife, and a small billy club. Also in their possession were portable radios and a scanner. The defendants restrained the victim, James Delach, the manager of the Goldsmith Jewelry Store, and his wife and three children with duct tape. The

- 7 -

> defendants demanded that Delach provide them with the combinations for the big and little safe, the combination for the key pads, the location of video cameras, and the key to his van. The victim complied with their requests and provided them with the information. It was determined that Campos stayed at the residence and guarded the victims, while Ahedo went and robbed the jewelry store. Another unindicted defendant acted as a lookout. After the jewelry store was robbed, the victims' hand restraints were released.[6]

Undoubtedly, Ahedo's nolo contendere plea in state court to this nearly identical additional robbery, a plea which was entered just five months before his federal trial and which resulted in a sixteen-year sentence, "would have weighed heavily upon the juror's minds." Counsel's advice that Ahedo not testify was hardly ineffective assistance.

Ground Four:

Ahedo's ground four asserts two claims of ineffective assistance of trial counsel. First, Ahedo argues that counsel failed to challenge count one's charge that the conspiracy included the plan for Ahedo to steal two firearms during a residential burglary. This claim is refuted by the record. See counsel's Rule 29 argument at 70-74 (Doc. 139). Second, Ahedo argues the impossibility of conspiring to obtain weapons in a burglary with the intent to use the weapons in a previously committed robbery; Ahedo argues that counsel was ineffective for not challenging the assertion that Ahedo committed the December 29, 1998, residential burglary to obtain the weapons used in the preceding November 25th Pasadena store robbery. Ahedo's claim is based on incorrect facts. Co-defendant Campos testified that Ahedo stole the firearms during a

---

[6] This summary of facts is copied from page 25 of Ahedo's presentence investigation report. Page 26 of the report also reveals that the jurors would have learned that, three months after the Diamond Bank robbery, Ahedo committed yet another armed burglary for which he is serving a state sentence of life imprisonment.

- 8 -

residential burglary and provided the weapons for the subsequent February 22nd Diamond Bank Jewelry Store robbery, not the earlier Pasadena store robbery. Transcript at 179-81 (Doc. 138).

Ground Five:

Ahedo's ground five asserts three claims of ineffective assistance of appellate counsel. Strickland governs an ineffective assistance of appellate counsel claim. Ahedo fails to prove the deficient performance prong by showing that appellate counsel did not raise a particular issue on appeal. Counsel need not raise every nonfrivolous issue on appeal. Jones v. Barnes, 463 U.S. 745 (1983). An appellate advocate provides effective assistance by winnowing out weaker claims and focusing on the appellate claims most likely to prevail:

> It is difficult to win a Strickland claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances. We have emphasized that even in a death penalty case, counsel must be "highly selective about the issues to be argued on appeal. . . ." United States v. Battle, 163 F.3d 1, 1 (11th Cir. 1998). The district court, having considered the record and [appellate counsel]'s testimony during the state post-conviction proceeding, found that [appellate counsel] had carefully considered many of the claims now raised in appeal, but ultimately chose to pursue the claims he felt were most likely to prevail and winnow out the arguments he thought were less persuasive.

Johnson v. Alabama, 256 F.3d 1156, 1188 (11th Cir. 2001), cert. denied 535 U.S. 926 (2002).

First, Ahedo faults appellate counsel for not challenging the denial of his Rule 29 motion. The basis for his argument ignores the testimony by co-defendant Campos outlined above in ground four. Second, Ahedo faults appellate counsel for not

challenging the lack of evidence to prove robbery, specifically the taking of property from the person of another. The Diamond Bank store robbery was effected by forcibly transporting the victim to the store after the robbers were unable to open the safes using the codes provided by the victim. The Pasadena store robbery was effected by holding the two store owners hostage while two of the robbers retrieved the jewelry from the store using codes provided by the victims. Ahedo fails to show that, but for counsel's failure to raise these two claims, he would have prevailed on appeal.

Third, Ahedo faults appellate counsel for not anticipating Blakely v. Washington, 542 U.S. 296 (2004), as a foreseeable extension of Apprendi v. New Jersey, 530 U.S. 466 (2000). An attorney's failure to anticipate a change in the law is not ineffective assistance of counsel. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.' ") (citations omitted); Davis v. Singletary, 119 F.3d 1471, 1476 (11th Cir. 1997) ("It was not professionally deficient for counsel to fail to anticipate that the law in Florida would be changed in the future to bar the admission of hypnotically induced testimony."); Thompson v. Wainwright, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986) ("defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law"). Nor is counsel ineffective if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it. See, e.g., Pitts v. Cook, 923 F.2d 1568, 1572-74 (11th Cir. 1991) (holding that even though a claim based upon the 1986 Batson decision was "reasonably available"

to counsel at the time of the 1985 trial, failure to anticipate the Batson decision and raise that claim was not ineffective assistance of counsel).

Accordingly, the motion to vacate sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Ahedo and close this action.

ORDERED in Tampa, Florida, on October 10, 2007.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE